

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JEROMY McCRACKIN, | ) | |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| TYNAN MULLEN, | ) | **WD86442** |
| | ) | |
| Respondent, | ) | **OPINION FILED:** |
| | ) | **April 2, 2024** |
| and | ) | |
| | ) | |
| SAFECO INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Cory L. Atkins, Judge**

**Before Division Two:** Anthony Rex Gabbert, Presiding Judge, and
Karen King Mitchell and Janet Sutton, Judges

Safeco Insurance Company of America appeals from the denial of its motion to

intervene in the wrongful death action filed by Jeromy McCrackin and Erica Robinson

(Parents)[1] against Tynan Mullen for the death of their son Riley McCrackin (Victim).

---

[1] Though the original petition and amendments were filed in Jeromy McCrackin's
name only, Erica Robinson testified at the trial, establishing herself as a person entitled to

Safeco sought to intervene for the sole purpose of seeking a stay of the wrongful death action until a separate declaratory judgment action, filed in federal court, could resolve whether Safeco had a duty to defend or indemnify Mullen under a homeowner's policy provided by Safeco to Mullen's grandmother. On appeal, Safeco argues that the trial court erred in denying both its motion to intervene and its motion to stay the wrongful death action because Safeco had an "undeniable right" to both intervention and a stay under existing Missouri case law. Finding no error, we affirm.

## Background[2]

On March 4, 2019, Victim was shot and killed in a parking lot outside of a pool hall. The probable cause statement from the death investigation indicated that there were two shooters: Mullen and Logan England. On April 26, 2019, both Mullen and England were indicted by a grand jury in Jackson County for first-degree murder and armed criminal action. On September 21, 2021, England pled guilty to a reduced charge of second-degree murder and armed criminal action in exchange for a sentence of twenty years' imprisonment. Mullen's case was set for a jury trial in November 2023.

On February 3, 2022, Parents filed a wrongful death suit against Mullen, England, and two others, alleging that the four defendants lured Victim from a pool hall out to a

---

recover under Missouri's wrongful death statute, and Jeromy McCrackin requested, under the authority of Rule 55.33(b), that the pleadings be amended to conform with the evidence presented. Mullen's counsel stated there was "no objection," and all parties and the court thereafter treated Erica Robinson as a plaintiff in the action.

[2] "In reviewing the trial court's denial of intervention as of right, we consider the facts in the light most favorable to the court's judgment." *Britt v. Otto*, 577 S.W.3d 133, 136 n.3 (Mo. App. W.D. 2019) (quoting *Wunderlich v. Wunderlich*, 505 S.W.3d 434, 435 n.1 (Mo. App. W.D. 2016)).

parking lot, where they ambushed, shot, and killed Victim. Parents accused Mullen of both participating in a civil conspiracy to shoot and kill Victim and engaging in a battery (shooting Victim) resulting in Victim's death.

On October 11, 2022, counsel for Parents sent a letter to Safeco, identifying Mullen as an insured under a Safeco policy[3] and offering "to settle the wrongful death claim against [Safeco's] insured in exchange for [Safeco]'s agreement to pay the total combined liability coverage limits." Safeco responded on December 5, 2022, advising Parents' counsel that there was no coverage available for the claim presented because the policy did not provide coverage for (1) "injuries expected or intended by any insured"; (2) "injuries which are the foreseeable result of an act or omission intended by any insured"; or (3) "bodily injury which results from violation of criminal law committed by, or with the knowledge or consent of any insured." The letter further claimed that "the policy only provides coverage for an occurrence and it does not appear an occurrence has been alleged."

On December 16, 2022, Safeco filed a declaratory judgment action in the United States District Court for the Western District of Missouri, seeking "a judgment declaring that, under the Safeco Policy, it has no duty to defend or indemnify Mullen with respect to the claims against him in the action captioned *Jeromy McCrackin v. M[.]H[.], Tynan Mullen, K[.]C[.], and Logan England*, Case No. 2216-CV02028, pending in the Circuit Court of Jackson County, Missouri, at Independence (the 'Underlying Litigation')."

---

[3] The policy at issue was a homeowner's policy issued to Mullen's grandmother, with whom Mullen allegedly lived at the time of the shooting.

On December 30, 2022, Parents sought leave to file a first amended petition, which alleged more specific facts surrounding Victim's death and each individual's involvement, including Mullen. The first amended petition continued to allege that Mullen participated in a civil conspiracy, but this time, the conspiracy involved scaring and fighting Victim, rather than shooting and killing him. The first amended petition no longer alleged that Mullen committed a battery against Victim; instead, it alleged that Mullen negligently failed to warn Victim of the danger posed by England. The same day, counsel for Parents sent an email to Safeco, advising Safeco of the first amended petition and ensuring that Safeco reviewed the allegations of the first amended petition with respect to the settlement offer.

On January 6, 2023, Safeco sent another letter to Parents' counsel, advising that there was no coverage under the allegations of the first amended petition because the policy did not provide coverage for (1) "injuries which are the foreseeable result of an act or omission intended by any insured . . . even if the injuries are of a different kind or degree than expected or intended"; or (2) "bodily injury which results from violation of criminal law committed by, or with the knowledge or consent of, any insured." The letter further indicated that "the policy only provides coverage for an occurrence, and it does not appear an occurrence has been alleged," and "there can be no coverage for a claim that is not cognizable under the law"; the letter noted that "[t]he allegations in the first amended petition do not support a claim for any type of 'negligence' or duty recognized in Missouri."

4

On February 24, 2023, Safeco filed a motion for summary judgment in the federal declaratory judgment action, arguing that there was no coverage under either the original or first amended petitions:

> Regardless of whether Mullen actually shot [Victim], the Amended Petition continues to allege [Victim]'s death was the result of a planned, armed ambush in which Mullen was an active, intentional participant. These allegations "contradict any possibility that [Mullen's] conduct was mere negligence." [*Cal. Cas. Gen. Ins. Co. of Or. v. Nelson*, No. 14-0604-CV-W-BP, 2014 WL 12585786, at *6 (W.D. Mo. Dec. 22, 2014)] (quotations omitted). Thus, for the same reasons that there was no coverage for the claim in McCrackin's Original Petition, there is no coverage for the claim in his Amended Petition, either. Further, the Amended Petition introduces an additional reason for lack of coverage—the purported "negligence" count is not permitted under Missouri law, as there is no legal duty to protect from a third person's criminal attack. There can be no coverage for a claim the law does not recognize.

On February 28, 2023, Parents filed a motion in federal court to stay the declaratory judgment action pending resolution of Mullen's criminal case. The motion to stay argued that "[t]he outcome of the state court criminal [case] and discovery will help illuminate whether Mullen acted intentionally or recklessly or illegally or none of the above. It is premature and potentially inconsistent for this Court to determine Safeco's coverage obligations without these facts having first been determined." Safeco filed a response in opposition to the stay on March 10, 2023, arguing that "[t]he ultimate resolution of the Jackson County criminal action is irrelevant to whether [the underlying] Safeco Insurance Policy . . . provides coverage for the allegations against Mullen in the underlying Jackson County, Missouri, wrongful death action, *Jeromy McCrackin v. Tynan Mullen, et al.*, No. 2216-CV02028." Instead, Safeco argued, "coverage can, and

must, be determined by comparing the Safeco Policy to the allegations in McCrackin's amended petition in the underlying wrongful death action."

On March 16, 2023, Parents sought leave to file a second amended petition against Mullen only, alleging counts of negligence (by participating in a "prank" that resulted in Victim's death) and failure to warn (either Victim or England that Mullen would fire a gun into the air as part of the "prank," thereby inspiring cross-fire from England that resulted in Victim's death).

On April 6, 2023, Safeco filed an amended motion for summary judgment in the declaratory judgment action in response to the second amended petition filed in the wrongful death action. In its amended summary judgment motion, Safeco maintained that, despite the amended allegations in the wrongful death action, there was still no coverage under the homeowner's policy:

> Despite casting Mullen as a mere prankster for purposes of insurance coverage, McCrackin still alleges a planned, armed, and criminal ambush in which Mullen intentionally discharged a firearm in close proximity to [Victim]. As with the Original Petition and Amended Petition, there is no coverage for the claim in the Second Amended Petition because, based on the pleaded allegations alone: (1) Mullen's ambush of [Victim] was not an "occurrence" as required for such coverage; (2) the Safeco Policy's exclusion for expected, intended, or foreseeable injury bars any such coverage; and (3) the Safeco Policy's exclusion for injury that results from violation of criminal law bars any such coverage. There is also no coverage because McCrackin's purported "negligence" and "failure to warn" counts are not permitted under Missouri law, as there is no legal duty to protect from a third person's criminal act. As held by the Eighth Circuit, there can be no coverage for a non-cognizable cause of action.

The amended summary judgment motion further argued that "Mullen's indictment and security video footage showing Mullen shooting at [Victim] refute McCrackin's

sterilized, if not outright fabricated, version of the attack on [Victim]. No matter how many times McCrackin amends his Petition to try to create coverage or delay a decision, he cannot escape these other known facts."

On April 24, 2023, Mullen joined Parents' motion to stay the declaratory judgment action, adding that the stay should last until the resolution of the underlying wrongful death action, which was then scheduled for a bench trial on May 15, 2023. Mullen argued that resolution of the wrongful death action would either moot the issue of Safeco's duty to indemnify or lead to an equitable garnishment action, where the duty to indemnify would be litigated. Parents joined in Mullen's motion two days later.

On April 28, 2023, Safeco filed a motion to intervene in the wrongful death action, solely for the purpose of staying the action pending resolution of the declaratory judgment action to determine Safeco's coverage obligations. On May 5, 2023, the federal court granted Parents' and Mullen's motion to stay the declaratory judgment action pending resolution of the underlying wrongful death action.

On May 19, 2023, Mullen pled guilty to first-degree involuntary manslaughter under § 565.024 and armed criminal action under § 571.015.

On June 14, 2023, the trial court in the underlying wrongful death action denied Safeco's motion to intervene and later entered an amended order explaining its rationale. The trial court explained that (1) Safeco lacked a right to intervene under Rule 52.12(a) because it lacked a direct interest in the wrongful death action; (2) Safeco was not allowed permissive intervention under Rule 52.12(b) because there was no right to intervene, coverage was not at issue, and there were no common questions of law or fact;

7

and (3) Safeco was not entitled to the only relief it sought—a stay of the proceedings—in light of the federal court's ruling staying the declaratory judgment action. The trial court entered a judgment against Mullen in favor of Parents for the wrongful death of Victim and awarded Parents $16.5 million in damages. Safeco appeals.

## Analysis

Safeco raises two claims on appeal; it argues that the trial court erred in denying both its motion to intervene and its motion to stay the wrongful death proceedings. Because Safeco had no direct interest in the wrongful death action, we affirm the trial court's judgment.

### I. The trial court did not err in denying Safeco's motion to intervene.

In its first point, Safeco argues that the trial court erred in denying its motion to intervene as a matter of right.[4] "We will affirm the trial court's decision denying intervention as a matter of right unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Henson v. Merob Logistics, LLC*, 670 S.W.3d 142, 146 (Mo. App. W.D. 2023) (quoting *Britt v. Otto*, 577 S.W.3d 133, 139 (Mo. App. W.D. 2019)).

Under Rule 52.12(a),[5] "[u]pon timely application anyone shall be permitted to intervene in an action" if one of two circumstances is met:

(1) when a statute of this state confers an unconditional right to intervene or
(2) when the applicant claims an interest relating to the property or

---

[4] While Safeco also argued for permissive intervention under Rule 52.12(b) below, it does not challenge the trial court's denial of its request for permissive intervention; therefore, we will not address that issue here.

[5] All Rule references are to the Missouri Supreme Court Rules (2023).

transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 52.12(a). Here, Safeco acknowledges that there is no statute conferring an unconditional right for it to intervene.[6]

To be entitled to intervention as a matter of right in the absence of a statute, an applicant bears the burden of establishing each of the following: (1) it has an interest in the underlying action; (2) disposition of the action may impede the applicant's ability to protect its interest, and (3) none of the existing parties will adequately protect that interest. *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 479 (Mo. App. W.D. 1992). If an applicant fails to establish any one of the three requirements, the trial court does not err in denying the requested intervention. *Britt*, 577 S.W.3d at 142.

Safeco did not establish a direct interest in the wrongful death action.

The 'interest' claimed by a party seeking to intervene as a matter of right must be such an immediate and direct claim upon the very subject matter of the action that the intervenor will either gain or lose by the *direct operation* of the judgment that may be rendered in the action in which intervention is sought.

*In re Estate of Langhorn*, 905 S.W.2d 908, 911 (Mo. App. W.D. 1995) (emphasis in original).

The only possible "interest" Safeco had in the wrongful death action was as a potential indemnitor of any judgment rendered against Mullen, if that judgment fell

---

[6] Though § 537.065.4 confers a right to intervention upon insurers under certain circumstances, the parties agree that those circumstances are not present here.

9

within the terms of Safeco's policy coverage.[7] "Missouri courts have long held that [t]he liability of an insurer as potential indemnitor of the judgment does not constitute a direct interest in such a judgment so as to implicate intervention as of right in that action." *Henson*, 670 S.W.3d at 148 (quoting *Britt*, 577 S.W.3d at 142).

Safeco argues that Missouri case law has essentially dispensed with the interest requirement for purposes of intervention where an insurer seeks to intervene solely for the purpose of seeking a stay of the underlying proceedings while the insurer pursues a declaratory judgment action with respect to its duties to the insured under the policy. Safeco argues that, because it filed a declaratory judgment action in federal court to determine whether it owed Mullen a duty to defend him in the wrongful death action, the trial court was required to allow Safeco to intervene in the wrongful death action for the

---

[7] In its motion to intervene, Safeco argued (in a footnote) that its "interest" consisted of "whether a duty to defend exists with respect to the action." Although the focus of its brief to this court was that intervention for the sole purpose of seeking a stay is a "narrow" form of intervention not controlled by cases addressing the need for a direct interest on the part of an insurance company to intervene for the purpose of substantively litigating liability, during oral argument, Safeco refocused its argument away from the remedy sought and again argued that it has a direct and immediate interest in determining whether it had the duty to defend. Because the duty to defend is inextricably intertwined with the ultimate duty to indemnify, we do not accept this distinction. In any event, whether Safeco had a duty to defend Mullen was not at issue in the wrongful death action. "[T]he right to sue for wrongful death is conditioned on the fact that the decedent could have maintained an action for damages for the injuries sustained had he or she survived." *Super v. White*, 18 S.W.3d 511, 515 (Mo. App. W.D. 2000). Thus, in the underlying action here, Parents had to prove the elements of their claims for negligence and failure to warn against Mullen. Whether Safeco had a duty to defend Mullen against those claims was a separate and unrelated legal question that could not be answered by a judgment either for or against Mullen for wrongful death. Therefore, Safeco did not stand to "either gain or lose by the direct operation of the judgment that may be rendered therein." *In re Estate of Langhorn*, 905 S.W.2d 908, 911 (Mo. App. W.D. 1995).

10

limited purpose of seeking a stay pending the outcome of the declaratory judgment action. We disagree.

Safeco's argument relies primarily on *State ex rel. Mid-Century Insurance Co. v. McKelvey*, 666 S.W.2d 457, 459 (Mo. App. W.D. 1984). In *McKelvey*, the plaintiff sued Insured (a minor) for damages resulting from personal injury. *Id*. at 458. Insured's guardian ad litem (GAL) contacted Insurer and demanded it defend Insured, without reservation of rights, in the personal injury action under the terms of Insured's parents' homeowner's policy. *Id*. Insurer refused to defend without a reservation of the right to deny coverage in the event a judgment was entered against Insured. *Id*. The GAL refused to accept the defense with the reservation of rights, and no answer was filed on Insured's behalf. *Id*. The plaintiff then moved for a default judgment. *Id*. While that motion was pending, Insurer filed a motion to intervene and defend, which the trial court denied. *Id*. Insurer then petitioned this court for a writ of mandamus to compel the trial court to allow Insurer to intervene. *Id*.

This court held, "the answer is perfectly plain that [Insurer] has no right of intervention, over [Insured's] objection, to defend [Insured] under a reservation of the right to deny coverage under the policy, and the trial court was correct in denying [Insurer's] application to intervene." *Id*. at 459. Nonetheless, the court noted that Insurer was not "without a remedy," for it could "file a declaratory judgment suit to determine the question of its policy coverage in this accident." *Id*. And, if it chose to do so, Insurer "may in its own behalf file in [the underlying personal injury action] an application for a stay of proceedings until the declaratory judgment action is decided." *Id*.

11

This court then issued a permanent writ of mandamus "command[ing] the trial court to permit intervention by [Insurer] in [the personal injury action] for the limited purpose of making application for a stay of proceedings pending the determination of the declaratory judgment action." *Id*.

Since the issuance of the *McKelvey* decision, questions remain about the application of Rule 52.12 to a motion to intervene for the limited purpose of seeking a stay. While Rule 52.12(a) was in effect at the time of the *McKelvey* decision and cases recognized that insurers lack a direct interest for purposes of intervention under the rule, the court still commanded the trial court to allow the insurer to intervene for purposes of seeking a stay without identifying a legal basis for doing so.[8] Our own court has repeatedly grappled with how to understand and apply *McKelvey* in cases that followed. In one case, we declared the *McKelvey* intervention "right" as one "of procedure rather than of interest," *Whitehead*, 844 S.W.2d at 481; while in another, we declared the holding in *McKelvey* nothing more than *dicta*. *Lodigensky v. Am. States Preferred Ins. Co.*, 898 S.W.2d 661, 666 (Mo. App. W.D. 1995). In two cases, we have distinguished *McKelvey*. *See, e.g., In re Estate of Langhorn*, 905 S.W.2d at 912 ("*McKelvey*'s rule

---

[8] The only legal ground cited in support of the decision to issue the writ was *Kollmeyer v. Willis*, 408 S.W.2d 370, 378 (Mo. App. 1966), wherein the Springfield Court of Appeals held that an insurer had standing to set aside a default judgment against its insured despite not being a party to the action resulting in the default judgment. *State ex rel. Mid-Century Insurance Co. v. McKelvey*, 666 S.W.2d 457, 459 (Mo. App. W.D. 1984). This court later recognized that *Kollmeyer* was wrongly decided insofar as it treated the underlying insurance contract as "still intact even after breach by the insurer by failure to defend the action against the insured." *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 483 (Mo. App. W.D. 1992).

would not apply where, as here, Vigilant is defending the underlying wrongful death action on a reservation of rights basis."); *Brooner & Assocs. Const., Inc. v. W. Cas. & Sur. Co.*, 760 S.W.2d 445, 448 (Mo. App. W.D. 1988) ("The facts of *McKelvey* are clearly distinguishable from those of the present case. Although Brooner has continued to demand coverage, it has not otherwise objected to the defense provided by Western but, in fact, has accepted it. Consequently, the reasoning of the *McKelvey* decision is not applicable here."). Yet, in another, we mention the holding in *McKelvey* although the right to intervene to seek a stay was not at issue on appeal. *Ballmer v. Ballmer*, 923 S.W.2d 365, 369-70 (Mo. App. W.D. 1996) (identifying *McKelvey*'s holding as allowing insurers to file declaratory judgment actions to determine coverage while also asking for a stay of the underlying tort suit pending resolution of the declaratory judgment action).

And, in the only other case to meaningfully discuss *McKelvey*, the Eastern District both distinguished it and questioned its holding:

> [Insurer] did not attempt to intervene and seek a stay in the [underlying] action. That distinguishes *McKelvey* . . . from the case before us. Further, we are unable to conclude that the remedy suggested in th[at] case[] should be generally available to the insurer. . . . Insurers must make hard decisions in determining whether to defend a tort action when some issue of coverage is present. We see no fairness, however, in removing the risk of such decisions from the insurer and transferring it to the insured or imposing the hardship of delay on the plaintiff. The insurer has the opportunity to control the litigation by accepting the defense without reservation. If it elects some other course it forfeits its right to participate in the litigation and to control the lawsuit. If its decision concerning coverage is wrong it should be bound by the decision it has made.[9]

---

[9] Although *State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307 (Mo. App. E.D. 1993), addresses the application of the *McKelvey* rule to tort litigation utilizing the provisions of § 537.065, the court's reasoning appears to have broader implications.

13

*State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307, 309 (Mo. App. E.D. 1993).[10]

This appeal presents the opportunity to reexamine and clarify our decision in *McKelvey*. In *Lodigensky*, we first questioned *McKelvey*'s suggestion of a limited right to intervene to seek a stay regardless of whether the requirements of Rule 52.12(a) were met but ultimately concluded we need not follow *McKelvey* because any indication of a limited right to intervene was *dicta*. *Lodigensky*, 898 S.W.2d at 666 ("we decline to adopt the *dicta* in . . . *McKelvey* approving limited intervention for th[e] purpose" of seeking a stay in the underlying action). In retrospect, our characterization of the right outlined in *McKelvey* as *dicta* seems inaccurate. Nevertheless, our refusal to follow *McKelvey* was sound. The intervention right it created is not supported by either statute or rule, because, in most cases, an insurer simply lacks a direct interest in the underlying tort litigation. The purpose of requiring a would-be intervenor to have a direct interest in the litigation is to avoid the involvement of "a mere interloper [who is] wholly incompetent to challenge the contentions of the opposing parties." 67A C.J.S. Parties § 119. Allowing an insurer who lacks a direct interest to delay the litigation is unfair to the parties who *do* have a direct interest insofar as it unnecessarily delays the administration of justice. *Augspurger v. MFA Oil Co.*, 940 S.W.2d 934, 936 (Mo. App. W.D. 1997) ("[W]hen a coverage question is present, an insurer should be bound by the

---

[10] Though the Missouri Supreme Court has recognized the apparent conflict between *McKelvey* and *Rimco*, it has not yet decided whether the intervention right provided in *McKelvey* and criticized in *Rimco* is permissible. *See State Farm Mut. Auto. Ins. Co. v. Ballmer*, 899 S.W.2d 523, 525 n.3 (Mo. banc 1995) ("This case does not present, and this Court does not decide, the issues of whether the court erred in allowing State Farm to intervene or in granting the stay.") (comparing *McKelvey* with *Rimco*).

14

decision it has made on that issue, and there is no fairness in shifting this burden to the plaintiff in the form of a delay.").

Furthermore, we continue to believe, as we stated in *Lodigensky*, that "the better policy is expressed by the Eastern District in *State ex rel. Rimco, Inc. v. Dowd*, 858 S.W.2d 307 (Mo. App. [E.D.] 1993)." *Lodigensky*, 898 S.W.2d at 666. Insurers have a contractual right to control the litigation by accepting a defense without reservation, but if they choose a different path, they should be bound by the decision made. *Rimco*, 858 S.W.2d at 309; *Augspurger*, 940 S.W.2d at 936. Allowing insurers a limited right to intervene solely for the purpose of staying the underlying litigation allows insurers to shift the risks inherent in a refusal to defend[11] onto the insured, and "Missouri has long recognized that such risks properly rest on the insurer, not the insured." *Lodigensky*, 898 S.W.2d at 667. In short, there is no legal justification for the limited right of intervention authorized in *McKelvey*. Therefore, to the extent *McKelvey* stands for the proposition

---

[11] "The decision by the insurer, as to whether it will refuse to defend because the claim upon which the action against the insured is grounded is outside the coverage of the policy, is attended with risk." *Whitehead*, 844 S.W.2d at 481. "Where the claim is actually outside the policy coverage, the refusal of the insurer to defend is a justified refusal, the insurer is not guilty of a breach of contract and incurs no legal liability by its action." *Id*. But, "[w]here the claim comes within the policy coverage, and so within the duty of the insurer to defend, the refusal of the insurer to do so is unjustified, and the insurer is guilty of a breach of contract." *Id*. "That the refusal of the insurer to defend on the ground that the claim is outside the policy is an honest mistake, nevertheless constitutes an unjustified refusal and renders the insurer liable to the insured for all resultant damages from that breach of contract." *Id*.

15

that insurers have a limited procedural right to intervene in the underlying litigation solely to seek a stay of that litigation, it should no longer be followed.[12]

In addition to relying on *McKelvey*, Safeco relies on footnotes in both *Geiler v. Liberty Insurance Corp.*, 621 S.W.3d 536, 544 n.2 (Mo. App. W.D. 2021) and *U-Haul Co. of Missouri v. Carter*, 567 S.W.3d 680, 683 n.4 (Mo. App. W.D. 2019), wherein we cited *McKelvey* with approval. Though we stated in both cases that "Missouri courts have expressly advised that insurers with good faith coverage questions in similar scenarios should file a declaratory judgment action simultaneous to the underlying personal injury action and seek a stay of the personal injury lawsuit proceedings until the declaratory judgment action is decided," neither case raised an issue of intervention by an insurer in the underlying action. *Geiler* was an appeal from an equitable garnishment action (the appropriate forum for insurers to raise coverage issues), and the insurer never sought to intervene in the underlying litigation. Thus, *Geiler* does not support a limited right of intervention for purposes of seeking a stay. And, in *U-Haul*, the insurer was an

---

[12] "[W]here it appears that an opinion is clearly erroneous and manifestly wrong, the 'rule [of] *stare decisis* is never applied to prevent the repudiation' of such a decision." *Novak v. Kansas City Transit, Inc.*, 365 S.W.2d 539, 546 (Mo. banc 1963) (quoting *O'Leary v. Illinois Terminal R.R. Co.*, 299 S.W.2d 873, 879 (Mo. banc 1957)). Insurers may still seek declaratory judgment actions to determine coverage, and any actual party to the underlying litigation remains free to seek a stay pending resolution of the declaratory judgment action, but insurers who refuse to exercise a contractual right to defend and cannot establish a direct interest in the underlying tort suit do not have a right to intervene in the underlying litigation.

Pursuant to Supreme Court Operating Rule 22.01, and the Missouri Court of Appeals Western District Special Rule 31, this opinion has been reviewed and approved by order of the court en banc, as this opinion chooses not to follow *State ex rel. Mid-Century Insurance Co. v. McKelvey*, 666 S.W.2d 457 (Mo. App. W.D. 1984).

actual party to the action, so intervention was again not an issue. Therefore, *U-Haul* does not support Safeco's claim to a limited right of intervention for purposes of seeking a stay.

In short, the only legal support for Safeco's argument is *McKelvey* and its progeny. Because *McKelvey*'s suggestion of a legal right to intervene for the limited purpose of seeking a stay of the underlying litigation was without legal basis, so too is Safeco's argument on appeal.

Point I is denied.

## II. The trial court did not err in denying Safeco's motion to stay the wrongful death proceedings.

In its second point, Safeco argues that the trial court erred in refusing to stay the wrongful death proceedings pending resolution of Safeco's declaratory judgment action. We disagree. Even if Safeco had been allowed to intervene, the trial court had discretion to deny the motion for stay.

"The granting or refusing of a stay of proceedings rests in the trial court's discretion, the exercise of which will not be disturbed on appeal unless clearly abused." *U.S. Bank, N.A. v. Coverdell*, 483 S.W.3d 390, 401 (Mo. App. S.D. 2015) (quoting *Green v. Miller*, 851 S.W.2d 553, 556 (Mo. App. W.D. 1993)).

Here, the trial court refused Safeco's request for a stay because it would "provide[] no meaningful relief for Safeco[,] as the federal court . . . indicated it will not undertake to evaluate the Petition for Declaratory Judgment until the underlying action in th[e trial c]ourt has been resolved." Safeco argues that the trial court's ruling was an abuse of

discretion because "its stated justification has no basis in the law." Safeco again relies on the footnotes in *Geiler* and *U-Haul* to support its argument. But, again, both cases are distinguishable.

*U-Haul* involved an appeal from a declaratory judgment action in which the insurer was a party to both the declaratory judgment action and the underlying personal injury suit. *U-Haul*, 567 S.W.3d at 682. All parties in the underlying personal injury suit jointly sought a stay of the proceedings pending resolution of the declaratory judgment action, but the trial court refused to grant the requested stay. *Id*. at 683. Although no challenge was raised on appeal to the court's ruling on the requested stay, this court, in a footnote, expressed confusion "as to why the judge declined to stay the personal injury lawsuit until the declaratory judgment action could be resolved. This decision is more confounding given that the stay was jointly requested by all of the parties to the personal injury lawsuit." *Id*. at 683 n.4. And it was upon this footnote that the court in *Geiler* relied in noting that "courts have demonstrated that they will protect insurers when they protect themselves." *Geiler*, 621 S.W.3d at 544 n.2.

To begin, the propriety of the trial court's ruling on the requested stay was not an issue in *U-Haul*, and there was no requested stay at all in *Geiler*. Thus, neither case bound the trial court here to grant Safeco's requested stay. Additionally, all parties in *U-Haul* jointly requested a stay of the personal injury action; whereas, the parties to the wrongful death action below all opposed the requested stay. Thus, one of the primary bases for this court's comment in *U-Haul* is not present here.

18

In any event, even the court in *McKelvey* recognized that the decision of whether to grant a requested stay in this very scenario was well within the discretion of the trial court. *McKelvey*, 666 S.W.2d at 459 ("We do not, of course, undertake to direct how any such application [for a stay] should be ruled."). And the Missouri Supreme Court recognized long ago that

> judicial discretion to stay relief in a suit for a declaratory judgment because of another action pending, may take cognizance of subsequent as well as prior executory actions between the same parties on the same issues, where the latter were naturally in contemplation when the declaratory suit was brought and were actually pending before it was heard.

*State ex rel. U.S. Fire Ins. Co. v. Terte*, 176 S.W.2d 25, 30 (Mo. banc 1943).

In short, the trial court was not required to grant the requested stay, nor was its refusal an abuse of discretion.

Point II is denied.

## Conclusion

The trial court committed no error in refusing Safeco's motions to intervene and stay the underlying wrongful death lawsuit.[13] The trial court's judgment is affirmed.

_____
Karen King Mitchell, Judge

Anthony Rex Gabbert, Presiding Judge, and Janet Sutton, Judge, concur.

---

[13] This opinion does not address the merits of Safeco's claims with respect to policy coverage. Nor does it address what effect, if any, the declaratory judgment action may have on a subsequent garnishment proceeding.